IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2010 Session

## BETTY ROSE v. COOKEVILLE REGIONAL MEDICAL CENTER AUTHORITY, ET AL.

Appeal from the Circuit Court for Putnam County
No. 06J0185     Amy T. Hollars, Judge

No. M2010-01438-COA-R3-CV - Filed January 13, 2011

Plaintiff, a lactation consultant formerly employed by Cookeville Regional Medical Center, sued the hospital for common law retaliatory discharge and violation of the Tennessee Public Protection Act; plaintiff also asserted a claim for punitive damages. The case was tried before a jury. At the close of plaintiff's proof, the court granted the Medical Center's motion for directed verdict on the Protection Act and punitive damages claims; the common law retaliatory discharge claim was allowed to proceed to the jury. The jury found for the Medical Center. Plaintiff appeals, asserting error in the trial court's grant of directed verdict and its rulings on evidentiary issues. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

James L. Harris, Nashville, Tennessee, for the appellant, Betty Rose.

Thomas Michael O'Mara, Cookeville, Tennessee, for the appellee, Cookeville Regional Medical Center Authority d/b/a Cookeville Regional Medical Center.

**OPINION**

Betty Rose ("Plaintiff") was employed on a *pro re nata*[1] basis as a lactation consultant at Cookeville Regional Medical Center ("CRMC"). Her patients included expectant mothers and newborns and she worked with new mothers on issues concerning breast-feeding. In the course of her duties, Plaintiff worked with patients of Dr. Jeffrey Gleason, an obstetrician and gynecologist. On April 25, 2005, Plaintiff sent a letter to Jeanie Austin, risk manager of CRMC, *inter alia*, complaining of Dr. Gleason's withdrawal of permission for Plaintiff to consult with patients from his practice group. In April 2006, Plaintiff's employment was terminated.

Plaintiff sued Cookeville Regional Medical Center Authority ("Defendant") for wrongful discharge, asserting that the hospital fired her for filing what she characterized as a grievance against Dr. Gleason.[2] She asserted a claim for common law retaliatory discharge and a claim under the Tennessee Public Protection Act ("the Act"), Tenn. Code Ann. § 50-1-304. She also asserted a claim for punitive damages.

The case was tried before a jury. At the close of Plaintiff's proof, Defendant moved for a directed verdict on all of Plaintiff's theories of recovery. The trial court held that Plaintiff failed to provide sufficient evidence of a violation of the Act and granted the motion on that claim. The court also found that Defendant had produced no evidence that Defendant acted with malice when it terminated Plaintiff and directed a verdict for Defendant on the claim for punitive damages. The court found that sufficient proof had been presented to allow the remaining claim to proceed to the jury, and Defendant presented its proof. At the close of all proof, Defendant again moved for a directed verdict. The court denied the motion and submitted the case to the jury, which returned a verdict for Defendant.

On appeal, Plaintiff claims that the trial court erred in excluding certain evidence offered by her and in directing a verdict on the Tennessee Public Protection Act claim.

---

[1] *Pro re nata* ("PRN") derives from Latin and translates as "in the light of what has arisen." BLACK'S LAW DICTIONARY 1257 (8th ed. 2004). At CRMC, PRN is an employee classification indicating that the employee is maintained on staff as needed.

[2] The lawsuit originally named the City of Cookeville d/b/a Cookeville Regional Medical Center as Defendant. An amended complaint was filed naming Cookeville Regional Medical Center Authority as Defendant, and an order was entered dismissing the complaint as to the City of Cookeville.

## I.  Exclusion of Testimony

Plaintiff asserts error in the trial court's rulings on two evidentiary matters, stating the issue as follows:

> Did not the trial judge err in refusing to allow the plaintiff to testify about what Shannon Hunter, defendant's Director of Women's Services, told the plaintiff about statements made to Ms. Hunter by Dr. Jeffrey Gleason, and about the instructions given plaintiff by defendant's management?

### A.  Plaintiff's testimony regarding Shannon Hunter

In support of her contention that the court erred in excluding her testimony of statements made to her by Shannon Hunter, Plaintiff cites the following testimony during Plaintiff's direct examination:

> [Mr. Harris].  Did anyone in management tell you that Dr. Gleason had complained to them about you?
> [Plaintiff].  Yes, sir.
> Q.  All right.  And who in management was that?
> A.  Shannon Hunter.  Well --
> Q.  What's her position with CRMC?
> A.  She was the director of women's services.
> Q.  All right.  And did she tell you -- well, first of all let me get a ruling from the Court on this.
> MR. HARRIS:  Ms. Hunter is a hospital official and I don't want to get into any hearsay here, but being in management I would think that would come under the exception of the hearsay rule.  I want to get that clear before I got into that.
> MR. O'MARA: What's the exception?
> MR. HARRIS:  Well, it's an admission of a party of interest.
> MR. O'MARA:  Ms. Hunter is here.  So most of the exceptions are not available because she's present and is on his witness list.  If he wants to solicit anything that she might say, he can ask her, Ms. Hunter, directly.
> THE WITNESS:  Okay.
> MR. HARRIS:  But she's not on the stand, so I can't ask her.
> THE COURT:  I'm going to disallow any testimony about what Ms. Hunter may have said.
> MR. HARRIS:  All right.

3

THE COURT: We can hear that directly later.

MR. HARRIS: All right. That's fine, Your Honor. Thank you.

Plaintiff did not make an offer of proof of what Ms. Hunter said and her counsel did not otherwise summarize the expected testimony for the court.[3]

Rule 103 of the Tennessee Rules of Evidence provides:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Tenn. R. Evid. 103(a)(2). Under this rule, when the specific evidentiary basis supporting admission is not apparent from the context, the party challenging the trial court's decision must make an offer of proof in order to preserve the issue for appeal. We will not reverse a trial court's ruling excluding evidence if the appellant fails to make an offer of proof regarding the substance of the evidence and the supporting evidentiary basis to support its admission. *Dickey v. McCord*, 63 S.W.3d 714 (Tenn. Ct. App. 2001); *Anderson v. American Limestone, Co.*, 168 S.W.3d 757 (Tenn. Ct. App. 2005).

On appeal, Plaintiff claims that "[t]here was no need for an offer or proof, since Exhibit 2 fully delineates the incident. We know what Ms. Rose's excluded testimony would have been." Plaintiff makes the inconsistent argument that an offer of proof of excluded testimony was not necessary because the substance of the excluded testimony was contained in an exhibit which was admitted at trial. To the extent that the testimony Plaintiff attempted to introduce was the same as had already been introduced through Exhibit 2, she has not been harmed by exclusion of the same evidence during her testimony.

---

[3] In her brief on appeal, Plaintiff specifies that "[t]he first instance of hearsay error [was] the court's refusal to allow Ms. Rose to testify about what the hospital[']s Director of Women's Services[, Shannon Hunter,] told her about Dr. Gleason having complained . . . ." Elsewhere in her brief, Plaintiff states that the court "committed [its] first reversible error [by] not permitting [Plaintiff] to testify about what Ms. Hunter told [Plaintiff] about Dr. Gleason's report on presumptive hearsay grounds." We do not consider these statements as offers of proof. Not only is it not sufficient for Plaintiff's counsel merely to say that he expected the witness to prove certain facts, *see Stacker v. Louisville & N.R. Co.*, 61 S.W. 766 (Tenn. 1901), the statements were not presented to the trial court.

*B. Exclusion of alleged instructions given to Plaintiff*

Plaintiff claims that a "second incident of erroneous hearsay exclusion" occurred when the trial court "either misconstrued or misapplied the hearsay rule in forbidding Ms. Rose to testify about instructions given her by hospital management that were, in her view, in violation of the Patients Bill of Rights." Defendant argues that this issue was not raised in Plaintiff's Motion for New Trial and has been, therefore, waived pursuant to Tenn. R. App. P. 3(e).

The Motion for New Trial includes the following grounds for relief:

6. That the court erred in not allowing Plaintiff to testify regarding the contents of the Code of Ethics for Nurses with Interpretive Statements and what she perceived as a violation by the Defendant of this document. (TR 53)[4]
. . . .
8. That the court erred in not allowing Plaintiff to testify as to what Defendant's management instructed her. (TR, page 136)

While the words used in Plaintiff's brief differ from those used in the Motion for New Trial, a fair reading of the motion and the testimony cited therein allows us to conclude that the substance of this issue –the assignment of error to what she perceived as the court's action in excluding Plaintiff from testifying as to certain instructions given to her by CRMC management, which instructions she deemed to be in violation of the Patient's Bill of Rights–was presented in the motion for new trial and, consequently, not waived. We will, therefore, address this issue.

Plaintiff cites two portions of her testimony as the court's "second incident of erroneous hearsay exclusion." The first cited testimony is as follows:

[Mr. Harris]. Do you feel like the hospital, in denying the treatment to patients that you were treating, violated the provisions of any of [the Tennessee Board of Nursing Rules and Regulations of registered nurses]?
[Plaintiff]. Yes. If you look under unprofessional conduct and negligence, habits or other costs it says, unprofessional conduct, unfitness or incompetency by reason of negligence, habits, or other causes; it says that those terms are used in the statute as defined but not limited to.
    Here's the ones that are significant: A, intentionally or negligently causing physical or emotional injury to a patient. And I felt like the hospital

---

[4] The numbers after each sentence are references to the trial transcript.

was trying to force me as a registered nurse to intentionally neglect the patients.

Then also C applied: Abandoning or neglecting a patient requiring nursing case. Women were crying, begging for help, asking for me by name. Let's see.

MR. O'MARA: Your Honor, once again, that's the standing objection to hearsay we've been cautioned about in the past.

THE COURT: Ms. Rose, I'm going to instruct you those types of statements are hearsay --

THE WITNESS: Okay.

THE COURT: -- repeating out-of-court statements of other individuals. And I would instruct you to refrain from conveying those types of statements.

THE WITNESS: May I ask --

MR. O'MARA: Your Honor, I ask that be stricken and the jury be asked to disregard it, please.

THE COURT: The Court will instruct that that comment be stricken -- statement be stricken from the record and the jury's instructed not to put any emphasis or to not pay attention to that statement.

THE WITNESS: Your Honor?

BY MR. HARRIS:

Q. Do you have a question for me, Ms. Rose?

MR. O'MARA: I object to any questions from the stand.

THE WITNESS: I wanted to clarify what she said to me.

MR. HARRIS: Okay.

THE WITNESS: If management instructs me that the patients are crying, is that hearsay if it's from management?

THE COURT: Well, that would be a double layer of, I would say, hearsay. It's still hearsay.

MR. HARRIS: All right.

THE WITNESS: Okay.

Plaintiff did not make an offer of proof of the testimony which she wished to give and which she contends was excluded; she contends that no offer of proof was necessary. Since the context of the testimony provides a sufficient evidentiary basis to analyze whether the exclusion of the testimony amounted to error, we will address this issue. *See* Tenn. R. Evid. 103(a)(2).

The question that initiated the ruling challenged by Plaintiff related to whether Plaintiff thought Defendant had violated the Tennessee Board of Nursing Rules and

6

Regulations.[5]  In immediately preceding questions, Plaintiff explained how Defendant's actions, in her view, constituted violations of the regulations.  Initially, no objections were raised; however, when Plaintiff stated that "[w]omen were crying, begging for help, asking for me by name," Defendant objected.  The court instructed Plaintiff that "repeating out-of-court statements of other individuals" was hearsay and could not be introduced.

Based on the manner in which the objection was raised and the court's instruction to the jury that the statement be disregarded, it is clear that the court was not excluding testimony regarding the Patient's Bill of Rights or Defendant's instructions; rather, the court was excluding testimony containing hearsay—the women's alleged statements.[6]

The second cited testimony, which occurred during Plaintiff's cross-examination in the context of questioning regarding other physicians' utilization of her services, is as follows:

> Q.  So we have all the pediatricians and those people – and the family practitioners – see all the babies.  In fact, that group of pediatricians see virtually every baby that comes out of the hospital, don't they?
> A.  Virtually every, no.
> Q.  How many? What do you think?
> A.  I have no idea.
> Q.  Okay.  So they still were available to write orders.  So all of Dr. Gleason's prohibition was his OB group, correct?
> A.  No
> Q.  Why?  That's all he had the authority over.
> A.  Am I allowed to say?
> Q.  If you know on firsthand knowledge and it's not hearsay, you're allowed to say it.
> A.  What management instructed me?
> Q.  What management instructed you?  I think the judge has already said those kinds of comments are hearsay if those people are available here at trial.
> A.  They're here.

---

[5] The regulations were introduced into evidence immediately prior to the question asked of Plaintiff, which began the quoted portion of the testimony.

[6] When Plaintiff asked the court whether such statements would be inadmissible even if conveyed by management, the court stated that the testimony "would be a double layer of, I would say, hearsay."  This was merely a statement of the court's opinion on the admissibility of the evidence and was not a ruling on specific evidence.

The cited testimony does not contain an objection to any testimony or question; nor is there any ruling or comment by the court. Consequently, there was no action by the court on which error might be predicated.

In neither of the excerpts quoted above does it appear that the court precluded Plaintiff from testifying regarding instructions that had been adopted by hospital management. Because Plaintiff failed to make an offer of proof, we cannot review the alleged error of the trial court in excluding her testimony regarding Ms. Hunter. We find no error in the trial court's evidentiary rulings.

## II. Directed Verdict on the Tennessee Public Protection Act claim

Ms. Rose also contends that the court erred when it granted a directed verdict on Ms. Rose's claim that her termination violated the Tennessee Public Protection Act, which provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b).

As noted previously, Ms. Rose's common law retaliation claim survived a motion for directed verdict and was submitted to the jury, which returned a verdict in favor of CRMC. Because Tenn. Code Ann. § 50-1-304(b) requires that the termination be "solely" for refusing to participate in or remain silent about illegal activities, a claim that a termination violated the Act places a higher burden on a plaintiff than does a claim of common law retaliation.[7] In deciding for Defendants on the common law claim, the jury determined that Ms. Rose's activities did not play a part in her termination. Consequently, this issue is pretermitted. *See*

---

[7] To prevail on a common law claim of retaliatory discharge, an employee must prove: 1) that an at-will employment relationship existed; 2) that the employee was discharged; 3) that the employee was discharged for attempting to exercise a statutory or constitutional right, or for any other reason that violates a clear public policy; and 4) that such action was a substantial factor in the employer's decision to discharge the employee. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002); *see also Anderson v. Standard Register Co.*, 857 S.W.2d 555, 557–58 (Tenn. 1993). As noted in *Phillips v. Anderson County*, No. E2009-01883-COA-R3-CV, 2010 WL 4514886 (Tenn. Ct. App. Nov. 10, 2010):

> [T]he first three elements of a statutory retaliatory discharge claim are identical to the elements of a cause of action under the common law. The fourth element of a TPPA claim differs from the common law claim in that, to benefit from statutory protection, an employee must demonstrate that his or her refusal to participate in or remain silent about illegal activities was the sole reason for his or her discharge.

*Phillips*, 2010 WL 4514886, at *4 (citing *Guy*, 79 S.W.3d at 535–37).

*Gager v. River Park Hosp.*, No. M2007-02470-COA-R3-CV, 2009 WL 112544 at *8 (Tenn. Ct. App. Jan. 14, 2009) (". . . inability to sustain a common law retaliatory discharge claim . . . necessarily dooms a statutory retaliatory discharge case.").

## III.  Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE

9