# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 16, 2011 Session

## PHOENIX CREDIT v. DEBORAH L. AKERS

**Direct Appeal from the Circuit Court for Williamson County**
**No. 09423    James G. Martin, Judge,**

---

**No. M2010-01297-COA-R3-CV - Filed March 10, 2011**

---

This is an appeal from the grant of summary judgment in favor of Appellee. Appellant obtained a credit card from Appellee's predecessor in interest, and defaulted on payment of the debt. Appellee brought suit to recover the debt, and the trial court granted summary judgment to Appellee. Appellant appeals, arguing that there is a dispute of fact as to whether Appellee is a lawful successor in interest, and also asserting that the trial court erred in denying Appellant's request to have certain documents included in the record. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER. J., joined.

Deborah L. Akers, Nashville, Tennessee, Pro Se.

R.W. Shick, Jr., Nashville, Tennessee, for the appellee, Phoenix Credit.

## MEMORANDUM OPINION[1]

On January 4, 2008, Appellee Phoenix Credit filed suit in the General Sessions Court

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

of Williamson County against the Appellant Deborah L. Akers. By its complaint, Phoenix Credit, L.L.C. sought to collect $7,800.55 plus court costs from Ms. Akers based upon her alleged default on a credit card.[2] It appears that Phoenix Credit experienced some difficulty

---

[2] Phoenix Credit's complaint was accompanied by the affidavit of Kayci Costa, a Phoenix Credit employee responsible for the company's books and records. Ms. Costa states that Deborah Akers is in default in the amount of $7,800.55. This type of affidavit is called an affidavit of sworn account. Sworn accounts are governed by Tennessee Code Annotated § 24-5-107(a), which provides, in pertinent part, as follows:

> (a) An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party sought to be charged, unless that party on oath denies the account or except as allowed under subsection (b).

> (b) The court shall allow the defendant orally to deny the account under oath and assert any defense or objection the defendant may have. Upon such denial, on the plaintiff's motion, or in the interest of justice, the judge shall continue the action to a date certain for trial.

According to the 13 Nancy F. McLean, Tennessee Practice: Civil Procedure Forms §8.1 (2011-2012):

> A licensed collection service is authorized by T.C.A. § 62-20-127 to take an assignment of accounts, bills, notes, or other indebtedness held by another person or entity, for the purpose of billing, collecting, or filing suit in the collection service licensee's own name, as the real party in interest. The following requirements must be met:

> (1) The assignor must make a voluntary, properly executed, and acknowledged assignment to the collection service licensee;

> (2) The original agreement between the creditor and the debtor must not prohibit assignments;

> (3) The assignment must contain a written agreement stating the effective date of the assignment and the consideration paid or given, if any, for the assignment. The written agreement must disclose that the collection service licensee may, for purposes of litigation, consolidate the assigned account, bill, note, or other indebtedness with those of other creditors against the

(continued...)

in serving Ms. Akers with the complaint; nonetheless, Ms. Akers was ultimately served and, on July 2, 2009, filed a motion to dismiss. As grounds for her motion, Ms. Akers asserts, in relevant part, that Phoenix Credit is "an entity entirely unknown to her." Specifically, Ms. Akers contends that she had no contractual relationship with Phoenix Credit; consequently, Ms. Akers states that Phoenix Credit has no legitimate claim against her. In response to the motion to dismiss, Phoenix Credit provided financial records revealing that Ms. Akers was issued a line of credit and corresponding credit card from Chase Bank. Ms. Akers made payments on the credit card debt, including a payment of $136.00 on February 17, 2005, and a payment of $131.00 on March 18, 2005. These are the only payments indicated in the record; however, we note that the payments were made by checks drawn on Ms. Akers' bank account, and both checks reference the last four digits of the disputed credit card. No further payments were received, although the record reveals that monthly statements were sent to the last known address for Ms. Akers (i.e., the address on her checks). With penalties and interest accrued due to her default, Ms. Akers' principal balance, as of her January 2006 statement, was $7,800.55. Ms. Akers' account with Chase Bank was subsequently assigned to Phoenix Credit through a series of successors in interest, *see infra*.

Based upon the proof, the General Sessions court entered judgment in favor of Phoenix Credit in the amount of $7,800.55 plus court costs. Ms. Akers timely appealed this judgment to the Circuit Court at Williamson County, where the matter was set for hearing. On November 6, 2009, Phoenix Credit moved the court for summary judgment asserting that there was no dispute of material fact: (1) that Ms. Akers had obtained the subject credit card, (2) that she had stopped making payments on the credit card, and (3) that the debit balance was subsequently charged off by Chase Bank and ultimately sold to Phoenix Credit. Ms. Akers opposed the motion for summary judgment, reiterating her position that she did not have a contract with Phoenix Credit. In response, Phoenix Credit filed the affidavit of its Collection Manager, Kevin Norman. Mr. Norman testified that Ms. Akers' debt account, which is held by Phoenix Credit, had originated as Ms. Akers' Chase Bank Master Card. Upon default of the terms of the Cardmember Agreement by Ms. Akers for failure to pay on the account, and pursuant to the assignment provision of the Cardmember Agreement, the charge off balance of $7,800.55 was assigned to CreditMax, L.L.C. on April 5, 2006.

---

[2](...continued)
        individual debtor or co-debtors; and

        (4) A collection service licensee bringing suit in its own name as an assignee may submit an affidavit of sworn account that has been executed under oath by the assigning party or by a person qualified to execute a sworn account pursuant to T.C.A. § 24-5-107(a).

CreditMax subsequently assigned the charge off balance to Phoenix Asset Holdings, L.L.C. on December 14, 2006. Phoenix Asset Holdings subsequently assigned the charge off balance to Appellee Phoenix Credit, L.L.C. on March 27, 2007. Bills of sale for these transfers were attached as exhibits to Mr. Norman's affidavit. Ms. Akers' Cardmember Agreement was also an exhibit to Mr. Norman's affidavit. It provides, in relevant part, as follows:

> **ASSIGNMENT**. We may assign your account, any amounts you owe us, or any of our rights and obligations under this agreement to a third party. The person to whom we make the assignment will be entitled to any of our rights that we assign to that person.

Following discovery, a hearing on Phoenix Credit's motion for summary judgment was held on March 29, 2010. By Order of March 30, 2010, the Circuit Court granted Phoenix Credit's motion for summary judgment, and entered judgment in favor of Phoenix Credit against Ms. Akers in the principal amount of $7,800.55, plus post-judgment interest at ten percent per annum pursuant to Tennessee Code Annotated § 47-14-121. Ms. Akers appeals. She raises three issues for review; however, we perceive that there are actually two issues, which we restate as follows:

> 1. Whether the trial court erred in denying Ms. Akers' request for admission of certain documents into the appellate record.
>
> 2. Whether the trial court erred in granting summary judgment in favor of Phoenix Credit.

Before reaching the substantive issue, we first note that Ms. Akers is proceeding *pro se*. While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing ***Paehler v. Union Planters Nat'l Bank, Inc***., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "[p]ro se litigants are not ... entitled to shift the burden of litigating their case to the courts." ***Whitaker v. Whirlpool Corp***., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing ***Dozier v. Ford Motor Co.***, 702 F.2d 1189, 1194-95 (D.C. Cir. 1983)). *Pro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere. ***Hodges***, 43 S.W.3d at 920-21.

## Admission of Documents

Issues regarding admission of evidence in Tennessee are reviewed under an abuse of

discretion standard. ***Dickey v. McCord***, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." ***Id***. Our Supreme Court discussed the abuse of discretion standard in ***Eldridge v. Eldridge***, stating:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. ***Overstreet v. Shoney's, Inc***., 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. ***Id***. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." ***Id***.

In the instant case, the appellate record contains no transcript of the evidence adduced at the hearing on the motion for summary judgment. However, the record does contain a filing by Ms. Akers made on July 6, 2010, which purports to be a Statement of the Evidence. Tenn. R. App. P. 24(c).[3] It does not appear that Phoenix Credit objected to this filing, nor

---

[3] This Rule provides, in relevant part:

> **Statement of the Evidence When No Report, Recital, or Transcript Is Available**. —If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days

(continued...)

does it appear that the trial court approved the purported statement of the evidence. Nonetheless, this Court may consider this statement of the evidence under subsection (f) of Rule 24.[4] In relevant part, Ms. Akers' statement of the evidence states that, while the trial court allowed oral arguments by the parties at the hearing on the motion for summary judgment, it specifically excluded "evidence presented by Akers with respect to Phoneix's [sic] standing to bring and sustain this civil action as a real party-in-interest." However, the statement of the evidence does not list the documents that were allegedly denied by the trial court. In her appellate brief, Ms. Akers includes two exhibits, "001," and "002." Exhibit 001 is a facsimile transmission dated March 12, 2010, from Chase Card Services to Ms. Akers. In relevant part, the transmission indicates that Chase has provided the credit-reporting agencies with information indicating that Ms. Akers' default account had been charged off and sold to another agency. Exhibit 002 is also a facsimile transmission, dated March 31, 2010, from CreditMax, Chase's immediate successor in interest, to Ms. Akers. This transmission indicates that CreditMax sold Ms. Akers' account to Phoenix Asset Holdings, L.L.C. on June 20, 2006, with an outstanding balance of $7,800.55.

Because the record does not contain the trial court's reasons for disallowing these two facsimiles, it is difficult for us to conduct a meaningful review on appeal. We note, however, that the first facsimile is dated March 12, 2010. The hearing on the motion for summary judgment was held on March 29, 2010. It appears, therefore, that Ms. Akers had ample time to file a supplement to her statement of undisputed facts and/or to ask the court for more time to do so. Rather, from what we gather from the record, it appears that Ms. Akers's first

---

[3](...continued)
> after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement...

[4] Tenn. R. App. P. 24(f) provides, in relevant part:

> (f) **Approval of the Record by the Trial Judge or Chancellor.** —The trial judge shall approve the transcript or statement of the evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the transcript or statement of the evidence and the exhibits shall be deemed to have been approved and shall be so considered by the appellate court, except in cases where such approval did not occur by reason of the death or inability to act of the trial judge....

attempt to introduce this unauthenticated document was at the hearing itself, and that Phoenix Credit lodged a hearsay objection, which was sustained by the court. From the record, we cannot conclude that the trial court abused its discretion in sustaining the objection to "Exhibit 001."

Concerning "Exhibit 002," on its face, the facsimile was transmitted on March 31, 2010, which was after the hearing on the motion for summary judgment. Because this document did not exist at the time of the hearing, and was, obviously, not considered by the trial court, the trial court correctly excluded it from the appellate record. Moreover, there is no indication in the record that Ms. Akers ever moved the court to consider evidence obtained after entry of the judgment.

However, even were we to assume that these documents were admissible and review them as part of the appellate record, we nonetheless conclude that they do not support Ms. Akers' argument that Phoenix Credit was not the lawful successor in interest to her Chase Bank account. Rather, the two subject facsimiles appear to support Phoenix Credit's position that it is the rightful successor in interest to the disputed account.

## Summary Judgment

It is well settled that a trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or

ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted).

When reviewing the evidence, we must determine whether a factual dispute exists. "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976) (citations omitted). In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners, LLC*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." Id. "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. S. Cumberland Amoco, et al*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

In support of its motion for summary judgment, Phoenix Credit provided the affidavit of its Collection Manager, Kevin Norman. In relevant part, Mr. Norman states that Phoenix Credit purchased Ms. Akers' account as a successor in interest to Chase Bank. Phoenix Credit provided bills of sale, detailing the line of successors. Phoenix Credit also provided all of the relevant statements on Ms. Akers' account, which statements outlined her default and accrual of interest and penalties. In addition, Phoenix Credit offered cancelled checks, drawn on Ms. Akers' personal account, for payments to the credit card while it was owned by Chase Bank. There is no indication in the record that Ms. Akers' credit card number changed when it was sold, nor is there any indication that Ms. Akers did not receive the statements and notices that are contained in the record. Mr. Norman also referenced the Cardmember Agreement, which was admitted into the record. This agreement clearly states that any contractual agreements by and between Ms. Akers and Chase Bank enure to Chase's successors in interest.

In her response to the motion for summary judgment, and in her statement of

undisputed material facts filed in support thereof, Ms. Akers does not dispute the fact that she established a credit account with Chase Bank and was issued a credit card having the last four digits of 1205. Ms. Akers also does not dispute the fact that she made two payments on this account, and admits that, other than those two payments, she "has not made any payment to Chase Bank or to any successor in interest to Chase Bank...." In opposition to the motion for summary judgment, Ms. Akers contends that there is a dispute of fact as to whether Phoenix Credit is "a lawful successor-in-interest to any credit card account [maintained by]...Deborah L. Akers." Despite Ms. Akers' argument, we find no evidence in the record to support her allegation. Rather, the uncontroverted bills of sale offered by Phoenix Credit clearly outline the successors in interest to Ms. Akers' account, and specifically show that Phoenix Credit is the lawful holder of the account. From the record, there is no dispute as to the material facts upon which this case hinges.

Having determined that there are no disputed material facts, under the summary judgment analysis, the court must then determine whether the moving party is entitled to judgment on those facts as a matter of law. Tenn. R. Civ. P. 56.04. As discussed above, the undisputed facts are as follows: (1) that Ms. Akers obtained a credit card from Chase Bank, which card was governed by a Cardmember Agreement; (2) that she defaulted on that debt; (3) that the Cardmember Agreement clearly and unambigously provides that the rights and obligations under the agreement enured to Chase's successors in interest; and (4) that Phoenix Credit was a lawful successor in interest to Chase as evidenced by the bills of sale. Based upon these facts, we conclude not only that Phoenix Credit had standing to bring suit against Ms. Akers for the outstanding debt, but also that Phoenix Credit was entitled to summary judgment as granted by the trial court.

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Appellant, Deborah L. Akers.

_____
J. STEVEN STAFFORD, JUDGE