# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 5, 2000 Session (at Nashville)

## JOANNE DICKEY, ET VIR. v. W. KEITH McCORD, ET AL.

**Direct Appeal from the Circuit Court for Knox County**
**No. 2-511-96      Harold Wimberly, Judge**

**FILED APRIL 4, 2001**

**No. E2000-00567-COA-R3-CV**

This is a personal injury action arising from a boating accident in the Bahamas. At trial, the jury returned a verdict for the defendants. The plaintiffs appealed, alleging that the jury's verdict was not supported by any material evidence as well as alleging error with the trial court's function as thirteenth juror and with its evidentiary rulings concerning an expert witness and admission of testimony concerning non-use of life preservers by the plaintiffs. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Thomas S. Scott, Jr. and Chris T. Cain, Knoxville, Tennessee, for the Appellants, JoAnne Dickey and Douglas Dickey.

Dalton L. Townsend, J. Michael Haynes and Amy V. Hollars, Knoxville, Tennessee, for the Appellees, W. Keith McCord, WKM INC., John Doe, and XYZ Corporation.

## OPINION

JoAnne Dickey (Mrs. Dickey) and her husband, Doug Dickey (Mr. Dickey), were visiting their friends, Keith McCord (Mr. McCord) and his wife, Peggy McCord (Mrs. McCord), at their condominium in the Bahamas. During their visits to the McCords', the Dickeys typically spent time fishing and boating with the McCords. This visit was no different, and on the morning of August 25, 1995, the couples arose early to prepare for their day's outing. Mr. McCord arose first and obtained reports of the local weather conditions from a Freeport radio station. He further made sensory observations of the weather and sea conditions from his condominium on Treasure Cay and checked the weather postings at the marina. On that morning, the skies were clear and the wind was from the southeast at less than five miles per hour. The seas were calm with gentle waves of one to two feet.

Around 10:00 a.m., the couples departed Treasure Cay in the McCord's twenty-six foot, center-console boat named the Lost Sea.[1] Mr. McCord drove the boat from a channel on the inland side of Treasure Cay out into the harbor area. After leaving the no-wake zone, Mr. McCord traveled around the east end of Treasure Cay and through Don't Rock Passage. At Don't Rock Passage, Mr. McCord lifted the boat's engines in order to proceed through a shallow area of shifting sand bars known as the flats. Once through the flats, Mr. McCord lowered the engines and continued towards Whale Cay Passage. Up to this point in their journey, the sea conditions had been relatively calm with waves around one foot in height and with wavelets in the sand bar area. When the boat entered Whale Cay Passage, it encountered a very large wave that broke over the boat, causing the boat to go under the wave. The impact of the wave hitting the boat knocked down Mr. Dickey, Mrs. Dickey, and Mrs. McCord. As a result of being knocked down, Mrs. Dickey fractured her right hip and sustained lacerations to her right forehead and chin.

The sea conditions leading up to the time of the accident are disputed. The Dickeys' account is that the boat began to encounter four to five foot waves and then one or two six to eight foot waves before being hit by the final, large wave. The McCords' testimony was that there was one predecessor wave and then, from out of nowhere, came the big wave that caused Mrs. Dickey's injuries.

On August 15, 1996, the Dickeys filed an action alleging that Mrs. Dickey sustained personal injuries and that her husband sustained derivative losses as a result of the boating accident on August 20, 1995. The Dickeys alleged that the accident and the resulting injuries to Mrs. Dickey were caused by the negligence of Mr. McCord in his operation of the boat, the Lost Sea. After a lengthy trial, the jury returned a verdict in favor of the defendants. The Dickeys filed a motion for a new trial, which was denied. This appeal followed, and the parties raise the following issues, as we perceive them, for this Court's review:

1. Whether the trial court properly performed its duty as the thirteenth juror in denying the Dickeys' motion for a new trial.

2. Whether the jury's verdict was supported by any material evidence.

3. Whether the trial court erred in prohibiting the Dickeys from identifying defendants' expert, Dr. Van Dorn, as a missing witness.

4. Whether the trial court erred in limiting the Dickeys' cross examination of Mr. McCord regarding Dr. Van Dorn.

5. Whether the trial court erred in prohibiting the Dickeys from using Dr. Van Dorn's deposition at trial pursuant to Rule 32.01(3) of the Tennessee Rules of Civil Procedure.

---

[1] The Lost Sea was owned by Mr. McCord's business, WKM, Inc., a defendant in this action.

6.       Whether the trial court erred in denying the Dickeys' motion in limine to prohibit any inquiry into the Dickeys' non-use of life preservers.

### *Thirteenth Juror*

When acting as the thirteenth juror in considering a motion for a new trial, the trial court must independently weigh the evidence, determine the issues presented, and decide whether the jury's verdict is supported by the evidence. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 717 (Tenn. Ct. App. 1999). If, after weighing the evidence, the trial court is satisfied with the jury's verdict, the court must approve the verdict. *See Ridings v. Norfolk Southern Ry. Co.*, 894 S.W.2d 281, 288 (Tenn. Ct. App. 1994). If, on the other hand, the trial court is not satisfied with the verdict, it must grant a new trial. *See id.* "The trial court's performance of its function as thirteenth juror must be performed without regard to and without deference being shown to the result reached by the jury." *See id.* at 288-89. An appellate court presumes the trial court properly performed its duty as the thirteenth juror when the trial court approves the jury's verdict without comment. *See id.* at 289. Where, as here, the trial court makes comments regarding the verdict on the record, this Court evidence, and was satisfied or dissatisfied with the verdict." *Miller v. Doe*, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993). This Court may reverse the lower court's judgment and order a new trial only when the record contains statements that the trial court was dissatisfied with or disapproved of the jury's verdict or when the trial court absolved itself of or misconstrued its function as the thirteenth juror. *See id.*

After hearing arguments on the Dickeys' motion for a new trial, the trial court considered this matter for several weeks. After announcing that it had reviewed the evidence presented, the court noted the grounds for the motion for new trial.[2] In making its decision regarding the motion for new trial, the court stated:

> The Court because of the length of time not only of the case but the time since the case had been tried asked for some time to review the Court file, the Court's notes, the exhibits. . . . And I've now done these things.
>
> . . . .
>
> The Court feels that there was more than sufficient evidence to find that [Mr. McCord] was not legally at fault and that he acted reasonably under the circumstances. . . .
>
> . . . .

---

[2] The court stated that the motion was based upon three main grounds, namely 1) that the verdict was contrary to the weight of the evidence; 2) that the trial court erred in its treatment of witness, Dr. Van Dorn, for numerous reasons; and 3) that the trial court erred in allowing questions concerning the Dickeys' non-use of life preservers.

The question obviously was did [Mr. McCord] exercise reasonable care in the operation of his watercraft. That was the question presented by the case and the question submitted to the Jury; did he, in fact, obtain appropriate and available information before the trip, did he act appropriately in response to that information, did he reasonably be [sic] aware of and observe the conditions that existed at the time and reasonably react to those conditions.

. . . based upon the testimony of people who were there the Court feels that there is more than sufficient evidence to support the verdict that [Mr. McCord] was not legally at fault in this case and was not negligent in this case. . . .

. . . The Court then approves the verdict in this case and asks that an order be submitted indicating that.

Although the trial judge did not specifically state that he had independently weighed the evidence, our review of his comments *in toto* convince us that he did so. Accordingly, we affirm the denial of the Dickeys' motion for a new trial.

### *Jury's Verdict*

When jury trials are involved, our task is to determine whether there is any material evidence to support the jury's verdict. *See Harper v. Watkins*, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); *Lassetter v. Henson*, 588 S.W.2d 315, 317 (Tenn. Ct. App. 1979); *see also* Tenn. R. App. P. 13(d). Moreover, "we must take the strongest legitimate view of all the evidence to uphold the verdict, assume the truth of all that tends to support it and discard all to the contrary. We are bound to allow all reasonable inferences to sustain the verdict, and, if there is any material evidence to support the verdict, we must affirm." *See Harper*, 670 S.W.2d at 631. We do not reweigh the evidence. *See Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985).

Over the course of this trial, six witnesses were called to testify regarding their opinions on how the wave materialized: Mr. Dickey, Mrs. Dickey, Dr. Jacobus Van de Kreeke (Dr. Van de Kreeke), Jack Riggleman (Mr. Riggleman), Mr. McCord, and Mrs. McCord. Mr. Dickey testified that the parties experienced a five minute period of four to five foot waves, followed by one or two six to eight foot waves, before encountering the last wave. Mrs. Dickey testified that they experienced rolling waves which increased in size as the boat moved forward, with the last wave being the biggest of all. Mr. McCord testified that they experienced waves of a foot and a half or less when they were passing through the sand bar area and then an unusual wave popped up, like a bending sheet of paper, from out of nowhere. Mrs. McCord testified that, after going through the Whale Cay Channel, the parties experienced one wave that the boat went over and then suddenly a huge wall of water came towards them that the boat went through. The Dickeys and the McCords were the only passengers on the boat at the time of the accident.

In support of their theory that the waves gradually increased, the Dickeys called two expert witnesses, Dr. Van de Kreeke and Jack Riggleman. Dr. Van de Kreeke testified at length to the scientific terminology associated with waves and to their causation. Further, he testified that, in his opinion, the wave climate in the Whale Cay Passage at the time of the accident was waves of all sizes and that amongst them was this one big wave. He opined that the waves were the result of Hurricane Felix, which, at the time, was located in Bermuda. Although Dr. Van de Kreeke testified that a lone wave occurring in an otherwise calm sea was only possible when there was seismic activity, he later admitted that a freak wave[3] not caused by a hurricane or earthquake could occur in any random setting. The Dickeys' other expert, Mr. Riggleman, testified that, in his opinion, the parties either experienced a gradual buildup in wave height with a big increase at the end or a straight line progression of building waves, depending on the circumstances at the time. Mr. Riggleman admitted, however, that the only people who truly knew what was experienced were the people in the boat. After hearing all of the testimony presented at trial, the jury returned a verdict for the defendants.

> Expert opinions, at least when dealing with highly complicated and scientific matters, are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are purely advisory in character and the trier of facts may place whatever weight it chooses upon such testimony and may reject it, if it finds that it is inconsistent with the facts in the case or otherwise unreasonable. Even in those instances in which no opposing expert evidence is offered, the trier of facts is still bound to decide the issue upon its own fair judgment, assisted by the expert testimony. . . . this is especially true when the opinion . . . amounts to no more than prediction or speculation.

*Gibson v. Ferguson*, 562 S.W.2d 188, 189-90 (Tenn. 1976) (citing *Act-O-Lane Gas Serv. Co. v. Hall*, 248 S.W.2d 398 (Tenn. Ct. App. 1951)). A jury is not bound to accept an expert witness's testimony as true.

Taking the strongest legitimate view of all the evidence to uphold the verdict, while assuming the truth of all that tends to support it and discarding all to the contrary, we find that the record does, in fact, contain material evidence to support the jury's verdict. Accordingly, we uphold the jury's verdict for the defendants.

---

[3]Dr. Van de Kreeke testified that a freak wave is a wave that is two to two and a half times as large as the significant wave height. Significant wave height was defined as the average of the one-third largest waves. Dr. Van de Kreeke also referred to a scientific publication authored by a Dr. Peregrin which discussed the causes of freak waves. Amongst those causes were topographical refraction, diffraction and reflection on different scales, a combination of swell and wind seas, and the response of a wave field to a turning wind field such as a hurricane.

### Dr. Van Dorn

On June 30, 1999, the defendants in this action identified, in their supplemental answer to the Dickeys' interrogatories, oceanographer, William G. Van Dorn (Dr. Van Dorn), as an expert witness whom they expected to call at trial. At a pre-trial hearing, the defendants informed the court that they did not intend to call Dr. Van Dorn as a witness at trial. Defendants then moved the court to prohibit any use of or reference to Dr. Van Dorn's August 30, 1999, discovery deposition pursuant to Rule 32.01 of the Tennessee Rules of Civil Procedure. The trial court ruled that Dr. Van Dorn could not be mentioned in the presence of the jury and that the court would address the particular issues relating to Dr. Van Dorn's involvement in the case as they arose during the course of trial. On appeal, the Dickeys' assert error with the trial court's ruling regarding Dr. Van Dorn in three respects: 1) its prohibiting the Dickeys from identifying Dr. Van Dorn as a missing witness; 2) its limiting the Dickeys' cross-examination of Mr. McCord regarding Dr. Van Dorn; and 3) its prohibiting the Dickeys from using Dr. Van Dorn's discovery deposition at trial. We will address each issue in turn.

### A. Missing Witness

The missing witness rule provides that

> [f]ailure of a party to call an available witness possessing peculiar knowledge concerning the facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of the party. No such inference arises where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence; or when an adverse inference would be improper for any other reason . . . .

*Stevens v. Moore*, 139 S.W.2d 710, 717 (Tenn. Ct. App. 1940) (citation omitted); *see also State v. Francis*, 669 S.W.2d 85, 88-90 (Tenn. 1984). As a prerequisite to commenting on a missing witness, the evidence must show "that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for the trial." *Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979).

> The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him. However, when it can be said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony," an inference may be drawn by the jury that the testimony would have been unfavorable.

*Francis*, 669 S.W.2d at 88-89 (citing ***Burgess v. United States***, 440 F.2d 226, 237 (D.C.Cir. 1970)). The missing witness rule is premised on the idea that "the absent witness, if produced, would have made an intelligent statement about what was observed." ***Id.*** at 89.

The Dickeys claim that they should have been allowed to identify Dr. Van Dorn as a missing witness. We disagree. In order to identify a witness as missing, the witness must have knowledge of material facts. Dr. Van Dorn was not present in the boat at the time of the accident; thus, he did not possess knowledge of how the wave materialized, a fact material to this dispute. Further, as Dr. Van Dorn was to testify, if called, to his prediction of the wave climate in the Whale Cay Passage at the time of the accident, evidence already entered at trial through the Dickeys' experts,[4] we find that Dr. Van Dorn's testimony would have been corroborative or cumulative at best.

For the foregoing reasons, we affirm the trial court's decision prohibiting the Dickeys from identifying Dr. Van Dorn as a missing witness. We note, however, that the trial court premised its decision on an erroneous belief that the missing witness rule does not apply to experts, when, in fact, it does indeed apply to expert witnesses. ***See Scripps-Howard Broad. Co., Inc. v. Regency Elecs., Inc.***, 765 F.2d 146, 146 (6th Cir. 1985). However, where a trial court rules correctly, yet for erroneous reasons, this Court will sustain its ruling upon what we conceive to be a correct theory. ***See Cannon Mills, Inc. v. Spivey***, 346 S.W.2d 266, 272 (Tenn. 1961).

## B. Cross-Examination

At trial, the Dickeys attempted to cross-examine Mr. McCord on the basis of his testimony concerning the term "freak" or "rogue" wave, believing that Mr. McCord's testimony was influenced by conversations had with or information received from Dr. Van Dorn:

Q.: Well, have you read anything about rogue waves since this accident?

A.: I have as I explained - - yes, as I told you, I have learned and found that there are concepts of I think the more technical name is freak waves or sneak waves. The Bahamian name is a rogue wave. And I have inquired about that and tried to find out about it. . . .

. . . .

---

[4]In their supplemental answer to interrogatories propounded by the Dickeys, the defendants claim that Dr. Van Dorn was to testify that the wave climate described by Mr. McCord was statistically probable in that a single large wave could have emerged from a relatively calm sea. Dr. Van Dorn testified in his deposition, however, that the Dickeys' version of events was more likely to have occurred than the McCords' version. This same testimony was elicited at trial from the Dickeys' expert, Dr. Van de Kreeke, when he testified that a freak wave could occur in any random setting, but that he believed that the Dickeys' version of events, that the wave climate in the Whale Cay Passage at the time of the accident was waves of all sizes and that amongst them was this one big wave, was accurate.

-7-

Q.: In this whole deposition . . . you never used the word freak anywhere, did you?

A.: I don't know whether I did or not. I don't know the distinction to this day between a freak wave and a sneak wave and a rogue wave.

Q.: Did you not read material in this case giving the technical definition of a freak wave as being a wave that was at least two to two and one half times the significant wave height of any particular wave, group of waves that you observe?

A.: I read - - I heard of that concept.

Q.: Mr. . . . McCord, you had an oceanographer in your condo in August of 1999, didn't you?

At a conference at the bench upon Mr. McCord's objection, the Dickeys' counsel asserted that he had the right to ask the question concerning the oceanographer (Dr. Van Dorn) after Mr. McCord testified about his knowledge of rogue waves or lack thereof. In response, the court sustained the defendants' objection, stating

[Mr. McCord's] opinion or anything else about that has nothing to do with anything. He didn't even express an opinion about that until you asked him about it, and you cannot set up a thing in that manner. And, besides, his opinion of that is meaningless in the context of this case. He's simply testifying about what he observed and not offered to give any explanation about how it might have happened. So, therefore, the objection is sustained . . . .

Counsel for the Dickeys at no time attempted to make an offer of proof to preserve Mr. McCord's testimony for the record.

Generally in Tennessee, a trial court's ruling on the admissibility of evidence is within the sound discretion of the trial judge. Further, trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant. A trial court's evidentiary ruling will only be overturned on appeal upon a showing of abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)(citations omitted).

According to Rule 103 of the Tennessee Rules of Evidence, a party cannot claim error upon a trial court's ruling excluding evidence unless "a substantial right of the party is affected, and . . . (2) *Offer of proof*. In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103. Additionally, where an appellant fails to make an

offer of proof, this Court will not reverse a trial court's evidentiary ruling. ***See Shepherd v. Perkins Builders***, 968 S.W.2d 832, 834 (Tenn. Ct. App. 1997).

Because we find that the Dickeys did not make an offer of proof and because we also find that the trial judge did not abuse his discretion in limiting the cross-examination of Mr. McCord as it related to Dr. Van Dorn, we affirm the trial court's evidentiary ruling to exclude such testimony by Mr. McCord.

## *C. Deposition*

On appeal, the Dickeys argue that the trial court erred by prohibiting them from using Dr. Van Dorn's deposition at trial, pursuant to Rule 32.01(3) of the Tennessee Rules of Civil Procedure, to impeach the McCords' testimony and their theory of the accident. Rule 32.01(3) of the Tennessee Rules of Civil Procedure provides as follows:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or that (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena or the witness is exempt from subpoena to trial under T.C.A. § 24-9-101; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used. Notwithstanding the foregoing provisions, ***depositions of experts*** taken pursuant to the provisions of Rule 26.02(4) ***may not be used at the trial except to impeach*** in accordance with the provisions of Rule 32.01(1).

Tenn. R. Civ. P. 32.01(3) (emphasis added). Rule 32.01(1) of the Tennessee Rules of Civil Procedure states that "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of ***deponent*** as a witness." Tenn. R. Civ. P. 32.01(1) (emphasis added). This restriction applies to discovery depositions of an adversary's expert. *See* Tenn. R. Civ. P. 32.01 advisory commission cmt. to 1986 amendment.

Reading the language of subsections (1) and (3) of Rule 32.01 concurrently, this Court finds that the rule regarding the use of expert depositions at trial is clear: An expert's deposition may ***only*** be used at trial to impeach the testimony of the expert as a witness. ***See also White v. Vanderbilt Univ.***, 21 S.W.3d 215, 226 (Tenn. Ct. App. 1999). Because Dr. Van Dorn was not called as a witness at trial, his deposition could not be used for any purpose. Accordingly, we affirm the trial court's decision on this matter.

### *Life Preservers*

The Dickeys contend that the trial court erred in denying their motion in limine which sought to preclude questioning either of them about their use or non-use of life preservers. The Dickeys argue that the trial court should not have permitted the defendants to inquire into the use or non-use of life preservers as such testimony was not relevant pursuant to Rules 401 and 402 of the Tennessee Rules of Evidence. Generally, Rule 402 states that all relevant evidence is admissible while irrelevant evidence is inadmissible. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

In this case, the determinative factual issue was how the wave that caused Mrs. Dickey's injuries emerged. The next question, according to Rule 401 of the Tennessee Rules of Evidence, is whether the Dickeys' states of mind tended to make the existence of the wave theories more probable or less probable than they would have been without the evidence. In the instant case, the Dickeys and the McCords disagree regarding the wave climate in the Whale Cay Passage at the time of the accident. The Dickeys assert that the waves gradually increased while the McCords assert that the wave popped up out of a relatively calm sea. In analyzing these two theories, this Court can understand the relevance of the testimony concerning the use or non-use of the life preservers. At first glance, such testimony concerning the non-use of life preservers by the Dickeys lends support to the McCords' version that the wave suddenly emerged from out of nowhere. However, further contemplation reveals that the Dickeys' non-use of life preservers does not negate their version of events. The Dickeys' testified that they experienced a gradual build up of waves as they traveled through the Whale Cay Passage, but they did *not* testify that they saw the last, large wave coming from a distance. Rather, they testified that they experienced a gradual build up of waves, and after going over one to two six to eight foot waves, they then encountered the last, large wave. In this respect, the testimony concerning the non-use of life preservers does not tend to make the evidence concerning the wave climate more probable or less probable. Again, however, the admission or exclusion of evidence at trial is within the sound discretion of the trial court and will not be overturned absent a finding of abuse of such discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Additionally, "[a]ppellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)(citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). As the foregoing discussion demonstrates that reasonable judicial minds could differ concerning whether to admit or exclude the testimony concerning the use or non-use of life preservers, and because we find that the trial court did not abuse its discretion, we affirm the trial court's decision to admit the testimony concerning life preservers.

### *Conclusion*

For the foregoing reasons, we affirm the trial court in all respects.  The costs of this appeal are taxed to the appellants, JoAnne Dickey and Doug Dickey, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE