IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2017 Session

## METROPOLITAN DEVELOPMENT AND HOUSING AGENCY v. NASHVILLE DOWNTOWN PLATINUM, LLC

**Appeal from the Circuit Court for Davidson County**
**No. 09C-3638          Kelvin D. Jones, Judge**

_____

**No. M2017-00450-COA-R3-CV**

_____

In this condemnation case, a jury trial was held concerning the amount of compensation owed to Appellant as a result of the governmental taking of its property. The jury returned a verdict finding that the fair market value of the property had been over $2,000,000.00 on the date of the taking, and the trial court entered judgment on the verdict. Although Appellant now appeals raising several issues, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, JJ., joined.

Timothy L. Warnock and Timothy Harvey, Nashville, Tennessee, and Rita M. Aliss Powers, James D. Masterman and Gregory E. Ostfeld, Chicago, Illinois for the appellant, Nashville Downtown Platinum, LLC.

G. Brian Jackson, David L. Johnson and Renard A. Hirsch, Sr., Nashville, Tennessee, for the appellee, Metropolitan Development and Housing Agency.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

In 2007, the Appellant Nashville Downtown Platinum, LLC ("Platinum") purchased real property ("the Property") in downtown Nashville for $1,400,000.00. Although the Property was being used as a surface parking lot at the time of Platinum's

purchase, Platinum claimed to have plans to build a hotel on the Property. Such plans never came to fruition.

On October 16, 2009, the Metropolitan Development and Housing Agency ("MDHA") filed a petition in the Davidson County Circuit Court to condemn Platinum's property in order to develop the Nashville Music City Center. In connection with its petition for condemnation, MDHA deposited the sum of $1,774,300.00 as an estimate of the just compensation that would be owed. In a subsequently-filed answer, Platinum denied that the amount deposited by MDHA represented just compensation for the proposed taking. Platinum prayed that the petition for condemnation be dismissed, or in the alternative, that a jury of view be empaneled to determine the amount of compensation owed.

By an agreed order entered on February 2, 2010, MDHA was granted exclusive possession of the Property effective January 29, 2010. At the time of the taking, the Property was zoned "CF," a category that imposed a height restriction of approximately seven stories for buildings. However, it is undisputed that it was widely known at the time of the taking that a change from "CF" zoning to "DTC" zoning was imminent. Under "DTC" zoning, buildings can be at least 30 stories tall. Although the trial court's February 2, 2010 taking order authorized the clerk to disburse to Platinum the deposit that had been tendered by MDHA, the order further provided that the disbursement of the deposit was "without prejudice to Platinum's claim for additional just compensation."

Following MDHA's taking of the Property, the parties filed a joint motion for a writ of inquiry, and a jury of view was subsequently appointed to assess the amount of compensation owed to Platinum.[1] After hearing testimony and evidence from both parties, the jury of view ultimately determined that the amount due to Platinum was $2,306,590.00. Although Platinum filed objections to the report of the jury of view, the trial court confirmed the report by order entered on January 26, 2015.

Following the trial court's confirmation of the jury of view's report, Platinum filed an appeal requesting a *de novo* jury trial pursuant to Tennessee Code Annotated section 29-16-118. A number of pre-trial matters soon ensued, including the filing of several motions in limine. After these pre-trial matters were resolved, a trial was held over the course of several dates in August 2016. Upon the conclusion of the trial proceedings, the jury returned a verdict finding that the value of the Property was $2,032,380.00 at the time of the taking.

---

[1] Although Title 29 of the Tennessee Code provides a procedure by which a jury of view may assess the value of the property being condemned, the owner of the property is not required to accept the decision of the jury of view and may pursue a right to a jury trial "in the usual way." *See* Tenn. Code Ann. § 29-16-118.

The trial court entered judgment on the jury's verdict on September 9, 2016. Platinum subsequently filed a motion for a new trial. The trial court denied this motion by order entered on January 26, 2017. The trial court also granted MDHA certain discretionary costs that had previously been requested pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure. The present appeal then followed.

## ISSUES PRESENTED

Platinum's overarching premise in this appeal is that the trial court did not appropriately preserve its right to receive just compensation for the taking of its land. In addition to asserting a host of evidentiary issues, which we will highlight in our discussion, Platinum raises the following issues on appeal:

- Whether the trial court erred in denying its motion for a new trial.

- Whether Tennessee's method for calculating just compensation in eminent domain cases violates the constitutions of the United States and Tennessee.

- Whether the trial court erred by granting MDHA's motion for discretionary costs.

## STANDARD OF REVIEW

This appeal follows a jury trial. "When reviewing an appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support them." *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011) (citations omitted). We "will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party." *Id.* Further, we will allow all reasonable inferences to uphold the jury's verdict. *Id.* If there is any material evidence to support the jury's verdict, the verdict must be affirmed. *Crabtree Masonry Co., Inc. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978) (citations omitted).

When acting as a thirteenth juror incident to the filing of a motion for a new trial, the trial court must independently weigh the evidence and determine whether the jury's verdict is supported by the evidence. *Dickey v. McCord*, 63 S.W.3d 714, 718 (Tenn. Ct. App. 2001) (citation omitted). "If, after weighing the evidence, the trial court is satisfied with the jury's verdict, the court must approve the verdict." *Id.* (citation omitted). On appeal, we presume that the trial court properly performed its duty as the thirteenth juror when the trial court approves the jury's verdict without comment. *Id.* (citation omitted). When the trial court makes comments regarding the verdict on the record, however, we examine the comments in order to determine whether the trial court properly reviewed

the evidence and was satisfied or dissatisfied with the verdict. *Id.* at 718-19 (citation omitted). We can reverse the trial court's judgment and order a new trial "only when the record contains statements that the trial court was dissatisfied with or disapproved of the jury's verdict or when the trial court absolved itself of or misconstrued its function as the thirteenth juror." *Id.* at 719 (citation omitted).

In this appeal, we are presented with a number of challenges to the trial court's evidentiary decisions. The admissibility of evidence is within the sound discretion of the trial court. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 385 (Tenn. Ct. App. 2006) (citation omitted). As such, "we will not overturn a trial court's decision to admit or exclude evidence without finding a clear abuse of discretion on the part of the trial judge." *Id.* (citation omitted).

## DISCUSSION

### Evidentiary Issues

As we have previously noted, this appeal requires us to consider a number of evidentiary challenges. As gleaned from the argument section of Platinum's brief, the following specific issues are raised:

- Whether the trial court erred in restricting the cross-examination of MDHA's appraiser.

- Whether the trial court erred in preventing Platinum's hotel industry expert from testifying about market trends post-taking.

- Whether the trial court erred in preventing Platinum's architect from presenting demonstrative exhibits to the jury.

- Whether the trial court erred in restricting the testimony of Platinum's appraiser.

- Whether the trial court erred by allowing MDHA to introduce post-taking evidence while denying Platinum a fair opportunity to do the same.

- Whether the trial court erred in allowing MDHA to read its former appraiser's jury of view testimony to the jury.

We will address each of these issues in turn.

***Whether the trial court erred in restricting the cross-examination of MDHA's appraiser.***

The first specific evidentiary challenge raised by Platinum is whether the trial court allowed for a fair cross-examination of MDHA's appraisal expert, Ted Boozer. According to Platinum, "[h]ad the trial court permitted a full and fair cross-examination of . . . Boozer, using post-taking events and trends, the evidence would have revealed favorable economic trends that started before the Taking Date and continued thereafter." As an initial matter, from our review of the record, it is unclear that the trial court definitely prevented Platinum from questioning Mr. Boozer about post-taking trends and events. As noted by MDHA, Platinum's appellate brief cites to only one portion of its cross-examination of Boozer, from which the following exchange is taken:

> [Counsel for Platinum]: These are two charts that you used and as I said you've been here in the courtroom and you heard Mr. Poe when he testified, it's a similar chart.
>
> At the time -- of course, end of 2009, your charts were the same as Mr. Poe's, there's an uptick that you see.
>
> [Boozer]: Yes, a slight uptick.
>
> [Counsel for Platinum]: And we know that continued in 2010. Did that -- given the fact that the economy --
>
> [Counsel for MDHA]: Your Honor, I object to any comments about what transpired after the date of taking.
>
> The Court: Move on.
>
> [Counsel for Platinum]: I'll move on. Your Honor, they already talked about that. They put in evidence of property values at that time and so I'm not sure I understand why that's a problem.
>
> The Court: Let's just see where you're going with it.

Although the trial court thus appeared to afford Platinum some leeway to explore this issue notwithstanding the earlier admonition to "[m]ove on," the record does not reveal that Platinum continued to pursue the subject. The cited portion of Mr. Boozer's cross-examination certainly does not show that Platinum attempted to do so.[2] Moreover, we

---

[2] Because it does not appear that Platinum attempted to explore or develop the issue further in its cross-examination of Mr. Boozer, this alone arguably countenances against appellate relief. *See* Tenn. R.

- 5 -

note that MDHA correctly observes that Platinum tendered no offer of proof as to what it intended to elicit on cross-examination. As a general matter, offers of proof are necessary for this Court to review a trial court's decision to exclude evidence. *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 286 (Tenn. Ct. App. 2012) (citations omitted); *see also In re Estate of Darken*, No. M2016-00711-COA-R3-CV, 2016 WL 7378806, at *12 (Tenn. Ct. App. Dec. 20, 2016) ("Without an offer of proof, we cannot conclude that the decision to limit cross-examination prejudiced Plaintiffs.").

Although Platinum does not concede that it failed to make an offer of proof, it contends that one was not required. Among other things, it argues that an offer of proof was not necessary because the substance of the excluded testimony was apparent from the context. *See Gillum v. McDonald*, No. M2003-00265-COA-R3-CV, 2004 WL 1950730, at *4 (Tenn. Ct. App. Sept. 2, 2004) (noting that an offer of proof is not required "when the substance of the evidence and the specific evidentiary basis supporting admission is apparent from the context of the questions"). It is not clear to us that this is the case. Although the cited portion of the transcript perhaps suggests that Platinum desired to elicit certain post-taking information concerning the 2010 year, the exact nature of what it wanted to explore is not clear here in the absence of an offer of proof. Accordingly, it is unclear whether any of the desired evidence would be competent and appropriately admissible under our rules of evidence and whether it would have affected the trial outcome. For this reason, we must reject Platinum's assertion of error on this issue.

### *Whether the trial court erred in preventing Platinum's hotel industry expert from testifying about market trends post-taking.*

Platinum's second evidentiary challenge relates to the trial court's limitation of the testimony of Jan Freitag, Platinum's hotel industry expert. According to its brief, Mr. Freitag was barred "from testifying about trends of increasing values and demand in the hotel market after the date of taking[.]" Platinum specifically argues that "Mr. Freitag would have testified regarding 'the hotel market in early to mid 2010 downtown Nashville,' directly after the Taking Date, in order to 'show the trend' of improvement in the hotel market that was already in progress on the Taking Date." Our disposition of this issue follows a similar analysis as our review of the issue involving Mr. Boozer. As we have noted, offers of proof are generally necessary for this Court to review a trial court's decision to exclude evidence. *Singh*, 390 S.W.3d at 286 (citations omitted). Here, however, no offer of proof was made as to what Mr. Freitag would have supposedly testified. Given the absence of an offer of proof, this issue is waived.

---

App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

***Whether the trial court erred in preventing Platinum's architect from presenting demonstrative exhibits to the jury.***

As previously noted, at the time of the taking, it was widespread knowledge that a zoning change for the Property was imminent. Under the new "DTC" zoning, buildings would be able to be at least 30 stories tall. Because rezoning had been imminent at the time of taking, Platinum desired to have its architect Michael Gardner present demonstrative exhibits depicting two buildings over 40 stories each in order to show the size of structures that could have been legally built on the Property under the limits of "DTC" zoning. MDHA opposed these efforts.

Prior to trial, on July 22, 2016, MDHA filed a motion in limine to exclude the drawing depictions Mr. Gardner had created. According to MDHA, Mr. Gardner's drawings would overemphasize a particular use for the Property. Moreover, by citing to Mr. Gardner's deposition, MDHA noted that Mr. Gardner had not determined whether the buildings he had depicted were even feasible from an engineering or financial perspective. With respect to the feasibility of constructing the structures drawn by Mr. Gardner, MDHA observed that Mr. Gardner had acknowledged that geotechnical and structural engineers would need to determine whether towers of the size depicted could actually be built on the Property. MDHA further supported its argument by citing to the report of Platinum's appraiser, Jack Poe, wherein Mr. Poe stated as follows:

> Based on . . . the state of economy in 2010, a typical investor may not maximize the allowable height as described by Michael Gardner AIA, but would exceed the seven story 226 room Aloft Hotel design (with 220 parking spaces) submitted by DW architects that was based on CF zoning on Parcels 106 and 107 prior to the date of appraisal. In other words, I think the maximally productive use of the site would be to build a 20+ story hotel building based on the 42 story concept provided by Michael Gardner AIA.

Although the trial court reserved ruling on MDHA's motion in limine following a pre-trial conference, Mr. Gardner's drawings were ultimately not allowed to be introduced at trial.

Platinum asserts that the trial court committed reversible error in not allowing Mr. Gardner's drawings to be shared with the jury. Among other things, it suggests that it had a right to introduce demonstrative exhibits pursuant to this Court's decision in *Metropolitan Development and Housing Agency v. Tower Music City II, LLC*, No. M2012-00108-COA-R3-CV, 2013 WL 1803690 (Tenn. Ct. App. Apr. 30, 2013). At issue in that case was whether the trial court erred in allowing the landowner to display an architect's rendering of an imaginary development of the condemned property. *Id.* at *8. The particular drawing at issue was not introduced as an exhibit in *Tower*, but it was

marked for identification and testified to by the landowner's senior vice president. *Id.* Although this Court found no abuse of discretion in the trial court's decision to allow the drawing to be shown to the jury, *id.* at *9, it does not follow that Platinum had an absolute right to present Mr. Gardner's drawings to the jury in this case.

As we have already noted, the admissibility of evidence is within the trial court's discretion. *Newcomb*, 222 S.W.3d at 385. Absent an abuse of discretion, we will not overturn a trial court's decision to exclude evidence. *Id.* (citation omitted). Although Platinum suggests that Mr. Gardner's exhibits would have helped demonstrate the value it should receive if the Property was put to its "highest and best use," we cannot conclude that the trial court abused its discretion in not allowing the drawings to be presented to the jury. First, as MDHA raised in its motion in limine, Mr. Gardner simply created drawings of what would have been *legally permitted* under "DTC" zoning. He had no expertise as to whether construction of the buildings on the Property was feasible from an engineering perspective. He also had no expertise as to whether the construction of the buildings was financially feasible. As noted by MDHA, Mr. Gardner had himself acknowledged in his deposition that the depicted buildings would only ultimately be feasible if they were feasible in light of the following four concerns: (1) zoning, (2) architecture, (3) engineering, and (4) finances. We note that when Platinum attempted to have Mr. Gardner testify about the drawings at trial, Platinum's counsel conceded that Mr. Gardner was not a structural engineer.

Second, we observe that Platinum's own appraiser, Mr. Poe, had testified as follows at trial:

> So then we come to maximally productive. So of those possible, legal, feasible uses, I came down -- I came to the conclusion that a hotel would probably be the highest and best use, but I needed to then determine -- decide what kind of a hotel or what type of hotel and how many stories. You know, obviously, if you can go to 40 stories, then you've got to consider the possibility that you could build a 40-story hotel.
>
> And what I was provided by the developer was an old drawing of -- I think it was a 6 or a 7-story hotel. And it was the concept plan that they were working on with the hotel company that they were attempting to franchise. At least that's what they told me.
>
> So I looked at these plans, and I thought, well, these were drawn under the old CF zoning and were probably in compliance. I hoped that they would have been drawn in compliance with the CF zoning at the lower height restriction. So I liked the idea of the concept, but I really didn't know how many stories to go.

He later continued:

> So I went and isolated or studied all of the tall buildings in Nashville, because I wanted to do -- what I wanted to do was propose the maximally productive hotel development on this site in light of the new DTC zoning, but still inform us with what's going on in Nashville.
>
> You know, you've got some buildings that are being built now in the 30-story range, but I wasn't comfortable stretching all the way out to 30 stories in my analysis, because I had to put myself back in that frame of mind, back in 2010, when there was less existing development, and people weren't as aggressive as they can be today, knowing what they know now.
>
> So I looked at all of the buildings. And I see that some of your tallest are 33 floors. And these tall buildings usually range from 15 to 30 stories. And so I chose 20 stories as a reasonable fit for this site, given its relatively thin configuration.
>
> So that's what I concluded as the highest and best use, would be a 20-story building with a hotel, and then retail on the ground floor.

In our view, it was clearly within the trial court's discretion to exclude Mr. Gardner's demonstrative exhibits in light of the above considerations. His depictions may have been appropriate to introduce if Platinum had evidence that the illustrated buildings represented the highest and best use of the Property and were actually feasible. However, as we have noted, it is clear that Mr. Gardner was not competent to testify that the buildings he depicted could feasibly be built on the Property, and Platinum's own appraiser testified that the highest and best use for the Property was a 20-story building with a hotel, not two 40-story towers. We accordingly find no abuse of discretion with respect to this issue.[3]

***Whether the trial court erred in restricting the testimony of Platinum's appraiser.***

Platinum's next issue focuses on the trial court's restriction of the testimony of its appraiser, Mr. Poe. Specifically, Platinum asserts that the trial court erroneously prevented Mr. Poe from explaining how he verified the comparable sales he used to value the Property. According to Platinum, had Mr. Poe not been restricted from doing so, he would have testified that he verified his comparable sales by consulting the comparable sales another appraiser, James Lamb, had utilized in the *Tower* case. In explaining its position in its appellate brief, Platinum states as follows:

---

[3] Although MDHA argues that Mr. Gardner's drawings were also properly excluded because they were improper rebuttal evidence, it is not necessary for us to address that specific contention.

This Court ruled in *Tower* that, because there was "nothing inappropriate in [Lamb's] methodology or valuation and both were subjected to extensive and rigorous cross-examination," Lamb's comparable sales amply supported the jury's conclusion that the *Tower* property was worth $123/square foot. 2013 WL 1803690, at *5-7. Because Lamb's comparable sales had received this Court's imprimatur, Poe relied on those sales to verify his conclusion that Platinum's Property next door was worth a similar value: $130/square foot.

According to MDHA, "[t]he real reason Platinum wanted the *Tower* case to be brought to the jury's attention is utterly transparent." Specifically, MDHA argues that it "would have been highly prejudicial and improper to allow introduction of the *Tower* jury verdict and/or appellate opinion." For its part, Platinum contends that it had no such intentions. Consistent with the positions advanced in his client's reply brief, Platinum's appellate counsel stated at oral argument that Platinum was not trying to get the *Tower* verdict before the jury. Having reviewed the record, however, we observe that this argument is belied by the offer of proof Platinum's trial counsel made with respect to this issue. In concluding the offer of proof as to the evidence Platinum desired to put before the jury concerning Mr. Poe's appraisal, his comparable sales, and the *Tower* opinion, Platinum's trial counsel offered two exhibits: the *Tower* majority opinion and the *Tower* concurring opinion. The majority opinion in *Tower* unmistakably references the amount of the verdict reached by the jury in that case.

At oral argument, Platinum's counsel did not only disclaim any intention to share the *Tower* verdict with the jury; he also specifically acknowledged that it would have been inappropriate for the jury to be advised of the verdict. As we have noted, however, the offer of proof on this issue references the verdict and the amount of compensation awarded in *Tower*. In light of this fact, we cannot conclude that the trial court abused its discretion in excluding reference to *Tower*. Inasmuch as the offer of proof admits, Platinum was, in fact, attempting to get the *Tower* verdict before the jury's eyes. Although Platinum's arguments on appeal perhaps claim narrower intentions, the offer of proof is the means by which we can determine whether the exclusion of proffered evidence was reversible error. *Hampton v. Braddy*, 270 S.W.3d 61, 65 (Tenn. Ct. App. 2007) (citations omitted). Here, the offer of proof was not limited to mere discussion of *Tower*, but included an attempt to share the appellate opinion and the jury verdict affirmed therein. Reference to *Tower* in this manner would have been highly prejudicial to the jury's attempt to give just compensation for taking of the Property that occurred in this case. We therefore find no error with respect to this issue.

***Whether the trial court erred by allowing MDHA to introduce post-taking evidence while denying Platinum a fair opportunity to do the same.***

The next issue raised by Platinum alleges error on the trial court's part in two respects. First, Platinum claims that the trial court erred in allowing MDHA to introduce evidence of a 2012 sale. Second, Platinum contends that it was not given a fair opportunity to offer evidence rebutting the 2012 sale. We find no reversible error with respect to these raised concerns.

As an initial matter, we observe that Platinum did not object to MDHA's efforts to introduce evidence of a 2012 sale. In fact, counsel for Platinum stated as follows at trial when MDHA began its questioning on this topic: "I don't have a problem with this line of questioning at all[.]" We accordingly conclude that any objection to the discussion of the 2012 sale was waived.

Similarly, we reject Platinum's contention that it was not given a fair opportunity to present evidence rebutting the 2012 sale. Platinum expressed a desire at trial to present rebutting evidence, and the trial court did not reject this request. Moreover, we observe that when the trial court ruled that Platinum would be given an opportunity to submit such evidence, Platinum's counsel replied as follows: "We will do that, Your Honor. We will get something that's very similar to this in terms of dates." Platinum never did so.

On appeal, Platinum specifically complains that it was not given enough time to present evidence rebutting the 2012 sale. However, the record does not indicate that Platinum ever raised this issue with the trial court or requested additional time. This fact countenances against any relief on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Platinum simply did not preserve any objections it may have had with respect to its particular concerns under this issue.[4]

***Whether the trial court erred in allowing MDHA to read its former appraiser's jury of view testimony to the jury.***

Platinum's next issue challenges the trial court's admission of the jury of view testimony of Norman Hall, one of MDHA's appraisers. Mr. Hall's prior testimony was

---

[4] With respect to the specific "timing" issue argued by Platinum on appeal, MDHA also correctly observes that Platinum did not raise this issue as part of its motion for a new trial. This is an additional basis for deeming the matter waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial[.]").

read into the record at trial upon a determination by the trial court that he was unavailable due to his health. On appeal, the parties dispute whether the trial court's decision to permit the introduction of Mr. Hall's testimony ran afoul of Rule 804(b)(1) of the Tennessee Rules of Evidence.[5]

Rule 804(b)(1) provides an exception to the hearsay rule when the declarant is unavailable. The rule specifically does not exclude:

> [t]estimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

Tenn. R. Evid. 804(b)(1). Here, there is no dispute that the evidence at issue is former testimony given under oath by an unavailable witness. Moreover, there is no dispute that Platinum, "the party against whom the testimony is now offered," *id.*, had an opportunity to develop the testimony by cross-examination. As it concerns the application of Rule 804(b)(1), the parties really only dispute one point: whether Platinum had a "similar motive" to develop Mr. Hall's prior testimony. According to Platinum, it lacked a similar motive to cross-examine Mr. Hall given the right to a *de novo* jury trial under Tennessee Code Annotated section 29-16-118(a). We reject Platinum's position on this issue. We are of the opinion that the mere availability of a jury trial following proceedings before the jury of view does not mean that Platinum lacked a similar motive. Like the issue at trial, the issue before the jury of view was the amount of compensation owed to Platinum. Platinum had an interest in establishing what it believed was a fair market value for the taking of its Property, and we therefore cannot conclude that it lacked a similar motive with respect to its cross-examination of Mr. Hall, one of MDHA's appraisers. We find no error in the admission of Mr. Hall's prior testimony. Having addressed the foregoing evidentiary concerns, we now turn to the remaining issues on appeal.

## Remaining Issues

***Trial Court's Role as Thirteenth Juror/Whether Material Evidence Supports the Jury's Verdict.***

---

[5] In addition to raising an issue under Rule 804, Platinum appears to suggest that Mr. Hall's testimony should have been excluded on the basis that it was cumulative. Inasmuch as this particular concern was not raised in the motion for a new trial, however, it is waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial[.]").

In the statement of the issues section of its brief, Platinum specifically proposes the following issue for our review: "Did the trial court err by denying Platinum's motion for a new trial when the evidence in the record did not support the jury's verdict?" This stated issue is later addressed in an argument section of Platinum's brief entitled "The Evidence in the Trial Record Does Not Support the Jury's Verdict." As developed therein, Platinum appears to argue (a) that the trial court did not properly fulfill its role as the thirteenth juror and (b) that the verdict cannot stand because there is no material evidence to support the jury's findings of fact. As we perceive it, Platinum's arguments appear to implicate two separate issues as opposed to one. *See Bradley v. Bishop*, No. W2016-01668-COA-R3-CV, 2017 WL 1192112, at *14 (Tenn. Ct. App. Mar. 30, 2017), *perm. app. denied* (Tenn. Aug. 18, 2017) (treating the propriety of the trial court's actions as a thirteenth juror as a separate issue from whether material evidence supports the jury's verdict). We will therefore proceed to address Platinum's respective arguments in turn.

We first address Platinum's raised concern that the trial court did not properly exercise its role as the thirteenth juror when ruling on the motion for a new trial. As previously noted, when the trial court acts as the thirteenth juror, it must independently weigh the evidence and decide whether the jury's verdict is supported by the evidence. *Dickey*, 63 S.W.3d at 718 (citation omitted). Although we presume that the trial court properly fulfilled its duty when the verdict is approved without comment, when comments regarding the verdict are made, we examine them on appeal. *Id.* at 718-19 (citations omitted). "This Court may reverse the lower court's judgment and order a new trial only when the record contains statements that the trial court was dissatisfied with or disapproved of the jury's verdict or when the trial court absolved itself of or misconstrued its function as the thirteenth juror." *Id.* at 719 (citation omitted).

Here, we have no basis to conclude that the trial court was dissatisfied with the jury's verdict or misconstrued its role as the thirteenth juror. In fact, comments included in the record indicate that the trial court properly heeded its role and was satisfied with the verdict. In denying Platinum's request for a new trial, the trial court stated as follows: "After independently weighing the evidence as thirteenth juror, the Court is satisfied that the preponderance of the evidence supports the jury's verdict." A nearly identical comment was made at the hearing on the motion for a new trial, where the trial court stated as follows: "After independently weighing the evidence and determining the issues presented, the Court is satisfied that the preponderance of the evidence supports the jury's verdict in this case. So, the Court respectfully denies Nashville Downtown Platinum, LLC's motion for a new trial." Accordingly, we cannot conclude that any reversible error was made with respect to the trial court's ruling on the motion for a new trial.

Having found no basis to conclude that the trial court abdicated its role as the thirteenth juror, we now turn to Platinum's argument that there is no material evidence to

- 13 -

support the jury's findings. *See Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) ("Where the trial judge has approved the verdict in its role as thirteenth juror . . . the Court of Appeals' review of the verdict . . . is limited to a review of the record to determine whether the verdict is supported by material evidence.")  As the Tennessee Supreme Court has previously stated:

> It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary.  Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

*Crabtree Masonry Co., Inc.*, 575 S.W.2d at 5 (citations omitted).

In accordance with the above standard, we are compelled to conclude that there is no reversible error.  In condemnation cases, the just compensation required to landowners is "the fair cash market value on the date of taking of the property." *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976) (citation omitted).  Here, material evidence exists to support the jury's verdict that the fair market value of the Property was $63 per square foot on the date of the taking.  We note that although some of the comparable sales relied upon by the parties' appraisers in this case reflected sales that were significantly higher or lower than this valuation, there were several comparable sales introduced into evidence revealing that many properties were sold for an amount close to the $63 per square foot value.  Overall, the jury valued the Property higher than MDHA's appraisers, but lower than Platinum's appraiser.  Taking the strongest legitimate view of the evidence in favor of the verdict, we cannot conclude that there is an absence of material evidence to support it.[6]

---

[6] In this case, the highest appraisal tendered by MDHA was from Mr. Boozer, who valued the Property at $60 per square foot.  Platinum's appraiser, Mr. Poe, valued the Property at $130 per square foot.  Although Platinum appears to complain that the jury did not accredit the appraisal of Mr. Poe, Mr. Poe's specific testimony warrants further attention.  We note that when Mr. Poe's testimony is construed closely, it suggests that the value of the Property would have been half of the $130 per square foot valuation as of the taking date.  Indeed, Mr. Poe's appraisal was based as of February 2, 2010 and specifically accounted for his opinion that the passage of "DTC" zoning had caused property values to double, "virtually overnight."  (Mr. Boozer also technically appraised the Property as of February 2, 2010, but he opined that it did not really matter to him whether the Property was appraised a week earlier or a

- 14 -

***Whether Tennessee's method for calculating just compensation in eminent domain cases violates the constitutions of the United States and Tennessee.***

In its appellate brief, Platinum submits that the method Tennessee uses to calculate just compensation "raises grave constitutional concerns." It complains broadly about how the trial court construed and applied past legal precedent and argues that its constitutional right to receive just compensation was wrongfully abrogated. However, the record does not reveal that Platinum ever asserted a constitutional issue in the trial court. As observed by MDHA, in the motion for a new trial, Platinum neither asserted that there was a constitutional concern with how evidentiary rulings were made nor asserted error with how the jury was instructed. With this in mind, even assuming a legitimate constitutional grievance did exist, we conclude that it is waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also Ellithorpe v. Weismark*, 479 S.W.3d 818, 829-30 (Tenn. 2015) (holding that a constitutional challenge was waived when raised for the first time on appeal).

***Discretionary Costs.***

Platinum's final issue on appeal relates to the trial court's decision to award MDHA discretionary costs. According to Platinum, the award of discretionary costs should be reversed. We disagree.

An award of discretionary costs made pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure is within the sound discretion of the trial court. *Owens v. Owens*, 241 S.W.3d 478, 497 (Tenn. Ct. App. 2007) (citations omitted). Although a party is not automatically entitled to discretionary costs if it is deemed to have prevailed at trial, courts generally award discretionary costs if the costs are reasonable and if the party requesting them has filed a timely motion satisfying the requirements of Rule 54.04(2). *Id.* (citations omitted). When deciding whether to award discretionary costs, courts should "(1) determine whether the party requesting the costs is the 'prevailing party,' (2) limit awards to the costs specifically identified in the rule, (3) determine whether the requested costs are necessary and reasonable, and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the

_____

week after that date.) The ordinance pertaining to "DTC" zoning passed its final reading on February 2, 2010, and Mr. Poe agreed that it was a fair construal of his testimony to say that property values doubled sometime during the week of February 2. Here, of course, the date of taking was January 29, 2010. Thus, strictly construed, Mr. Poe's testimony suggests that the Property was worth $65 per square foot as of the taking date.

discretionary costs to which it might otherwise be entitled. *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35-36 (Tenn. Ct. App. 2002) (footnotes omitted).

In its principal appellate brief, Platinum does not argue that MDHA should not be considered the prevailing party for purposes of Rule 54.04(2). In opposing the trial court's award of discretionary costs, however, Platinum contends that the trial court failed to determine (a) whether the awarded costs were necessary and reasonable and (b) whether MDHA engaged in conduct during litigation that warranted depriving it of the requested costs. Interestingly, Platinum does not appear to actually argue in its brief that the awarded costs were unnecessary or unreasonable, nor does it point to any conduct of MDHA that it contends should warrant depriving it of the requested costs. In any event, we disagree with Platinum's contention that the trial court failed to consider the relevant considerations incident to its award of discretionary costs. It is implicit from the award that the trial court determined the awarded costs to be reasonable and necessary and that MDHA had not engaged in any conduct that should deprive it of the costs. When the trial court awarded discretionary costs, it noted that it had considered the "parties' filings, arguments by counsel in open court, and the entire record." Both the reasonableness/necessity of the requested costs and the issue of MDHA's conduct in litigation had been placed into issue by the prior trial court filings. For instance, the original motion for discretionary costs was supported by an affidavit by MDHA's counsel attesting that the requested costs were reasonable and necessary. Moreover, when Platinum responded to MDHA's motion for discretionary costs, it argued that a "balance of the equities" warranted a denial of MDHA's motion and that MDHA had incurred its costs as a result of its own conduct. Again, it is implicit from the trial court's decision to award costs that it found them to be reasonable and necessary and that MDHA had not engaged in any conduct that should deprive it of costs to which it might otherwise be entitled. We find no abuse of discretion on the part of the trial court.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the Appellant, Nashville Downtown Platinum, LLC, and its surety, for which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

- 16 -