IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2022 Session

## TAMMY GOODRICH v. CHARLES VAN MORGAN

Appeal from the Circuit Court for Knox County
No. 151951, 151952  Gregory S. McMillan, Judge

_____

### No. E2021-01045-COA-R3-CV

_____


A meeting between siblings about their deceased mother's estate went awry. As a result of the meeting, one sister, and her spouse, sought a protective order against the sister's brother. After a hearing, the trial court granted the protective orders. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. Neal McBrayer, J., delivered the opinion of the court, in which Thomas R. Frierson II and Kristi M. Davis, JJ., joined.

Charles Van Morgan, Knoxville, Tennessee, pro se appellant.[1]

Fred Goodrich and Tammy Goodrich, Knoxville, Tennessee, pro se appellees.


### MEMORANDUM OPINION[2]

### I.

On Independence Day last year, the fireworks were not limited to the night sky. On that date, Tammy Goodrich and her brother, Charles Van Morgan, met with their three sisters at their late mother's home. They hoped to settle a family dispute over their mother's estate. The events at the meeting led Ms. Goodrich and her husband, Fred Goodrich, to petition for orders of protection against Mr. Morgan.

_____

[1] Mr. Morgan was represented by counsel in the proceedings below but is acting pro se on appeal.

[2] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case." TENN. CT. APP. R. 10.

Ms. Goodrich alleged that Mr. Morgan "got very angry" after she refused to hug him. She claimed that he "beat on the table while screaming at [her]." According to Ms. Goodrich, Mr. Morgan called her "a greedy little piece of dirt" and said "he would give [her] a fight." And he "said multiple times that he [wa]s going to destroy [her]," including that "he was going to destroy [her] ass." Ms. Goodrich also contended that Mr. Morgan blocked the doorway when she tried to leave. And she recalled that he said her "family had better stay away from him" and that "he will put [Mr. Goodrich] in the ground." Ms. Goodrich said she was scared of Mr. Morgan and did not know what he would do.

Mr. Goodrich was not present for the meeting. But he listened to an audio recording of the meeting that his wife had made with her phone. Mr. Goodrich likewise claimed that Mr. Morgan screamed that he would "put [Mr. Goodrich] in the ground." Mr. Morgan said "[I] ha[ve] done it before." Mr. Goodrich was "afraid of what [Mr. Morgan] might do."

At the hearing on the petition for orders of protection, the Goodriches played the audio recording of the incident to corroborate their testimony. Before the recording was played, Mr. Morgan objected that it was prejudicial and lacked probative value. He also objected that there was no foundation. The trial court overruled the objections.

Mr. Morgan testified in his defense. He admitted that he told Ms. Goodrich he "would destroy her." But he maintained that he would not have actually hurt her and did not threaten her with physical violence. According to Mr. Morgan, Ms. Goodrich had smeared his campaign for governor by telling people he was a violent person. And, in his words, he "simply responded that [he] would annihilate her character since she was annihilating [his]." That is, Mr. Morgan only wanted to destroy Ms. Goodrich "politically." He considered himself "a political person," not "a violent person." In Mr. Morgan's view, what he said at the family meeting was protected political speech.

The other three sisters also testified in Mr. Morgan's defense. All three gave essentially the same testimony. Each testified that Ms. Goodrich antagonized Mr. Morgan. She refused to hug him and threw his campaign bumper sticker at him. The sisters agreed that Mr. Morgan then "started hollering" at Ms. Goodrich. He "exploded" and "chewed her out." There was "a screaming argument." But, from the sisters' perspective, Mr. Morgan never threatened Ms. Goodrich with physical violence. "You would have to know [their] brother" to understand why. He normally yells, cusses, calls people names, and says things he does not mean during arguments—especially when defending his political campaign. Yet, to the sisters' knowledge, he has never assaulted anyone. And he did not prevent Ms. Goodrich from leaving. None of the three sisters feared their brother.

Based on "the anger and the vehemence of the statements," "the volume, and the language" that Mr. Morgan used on the recording, the court granted the Goodriches orders of protection, which would remain in effect for one year. The court discredited

Mr. Morgan's testimony. Mr. Morgan "clearly ha[d] a fuse." On the recording, the court "clearly heard" him say "I will put you and your family under the lawn" and "I'll destroy your ass." The court also heard "a feminine voice" say, at least once, "Let her out." The Goodriches testified that those events placed them in fear. The court also rejected Mr. Morgan's claim that he was only engaging in political speech.

## II.

On appeal, Mr. Morgan argues that he engaged in political speech. He also claims that he was denied due process. In his view, the proceedings were biased, and he was denied a closing argument. Mr. Morgan raises evidentiary issues based on relevance, prejudice, and lack of foundation too. And he claims that the facts did not support entry of orders of protection.

Mr. Morgan is acting pro se. We "take into account that many pro se litigants have no legal training and little familiarity with the judicial system."[3] *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). They "are entitled to fair and equal treatment." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). But we "must not excuse [them] from complying with the same . . . rules that represented parties are expected to observe." *Hessmer*, 138 S.W.3d at 903.

Various rules govern whether a party has waived an issue on appeal. Issues "'raised for the first time on appeal are waived.'" *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 336 (Tenn. 2020) (citation omitted). A party also waives evidentiary issues if he "fails to make an offer of proof" in the trial court. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); *see* TENN. R. EVID. 103(a)(2). And a party "who failed to take whatever action [that] was reasonably available to prevent . . . an error" waives the issue. TENN. R. APP. P. 36(a); *see Godbee v. Dimick*, 213 S.W.3d 865, 897 (Tenn. Ct. App. 2006) (explaining that a party cannot "'take advantage of errors which he himself committed, . . . or which were the natural consequence of his own neglect'" (citation omitted)).

Here, Mr. Morgan did not raise the issue of bias in the trial court. And he did not request a closing argument. He also claims that the court prevented him from providing relevant testimony of why he was late to the family meeting. But he made no offer of proof. So Mr. Morgan waived these issues.

---

[3] We note, however, that Mr. Morgan states he went to law school and passed the bar exam.

## A.

The First Amendment to the United States Constitution protects "the freedom of speech." U.S. CONST. amend. I;[4] *see also* TENN. CONST. art. I, § 19. Political speech is "at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (citation omitted). The amendment also protects speech that is "offensive," "distasteful," or "crude." *See Cohen v. California*, 403 U.S. 15, 21, 25-26 (1971). And it protects "inappropriate" and "controversial" speech. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citation omitted). "[O]ne man's vulgarity is another's lyric." *Cohen*, 403 U.S. at 25.

But "the right of free speech is not absolute." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). "[T]hreats of violence are outside the First Amendment." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). Specifically, it "is settled that the Constitution does not protect true threats." *Elonis v. United States*, 575 U.S. 723, 746 (2015) (Alito, J., concurring in part and dissenting in part); *see Virginia v. Black*, 538 U.S. 343, 359 (2003). A "true threat" occurs when "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." *Black*, 538 U.S. at 359. Importantly, "[t]he speaker need not actually intend to carry out the threat." *Id.* at 359-60. Prohibiting true threats is, instead, meant to "protect[ ] individuals from the fear of violence . . . and from the possibility that the threatened violence will occur." *R.A.V.*, 505 U.S. at 388.

We conclude that Mr. Morgan did not merely engage in political, offensive, or inappropriate speech. His speech constituted a true threat. He said nothing of his political campaign when he screamed, among other things, that he would put the Goodriches "under the lawn" and "destroy" them. Mr. Morgan testified that he would not have actually hurt the Goodriches. But, assuming this is true, his lack of intent to "carry out the threat" is irrelevant. *See Black*, 538 U.S. at 359-60. As the trial court found, Mr. Morgan placed the Goodriches in fear that he would carry out the threatened violence. *See R.A.V.*, 505 U.S. at 388.

## B.

Mr. Morgan argues that there was a lack of foundation for the audio recording of the incident. A proper foundation is laid if there is "evidence sufficient to the court to support a finding . . . that the matter in question is what its proponent claims." TENN. R. EVID. 901(a). Recordings "may be presented . . . by any witness who was present during their recording or who monitored the conversation and was in a position to identify the

---

[4] "[T]he Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

declarant." *State v. Walker*, 910 S.W.2d 381, 394-95 (Tenn. 1995). And a witness may testify to his or her opinion on the identity of a speaker, whether the witness heard the voice "firsthand or through mechanical or electronic . . . recording." TENN. R. EVID. 901(b)(5).

Here, Ms. Goodrich was present during the recording and the conversation; she recorded the incident herself with her phone. So she could identify the speaker as her brother, Mr. Morgan. There was sufficient evidence that the recording was of the incident and that Mr. Morgan was the speaker. Mr. Morgan did not show that the recording was of anything other than what Ms. Goodrich claimed it to be. *See State v. Robinette*, No. E2012-00640-CCA-R3-CD, 2013 WL 5461101, at *8 (Tenn. Crim. App. Sept. 30, 2013) ("[T]he party challenging the recordings bears the burden of showing that they are inaccurate." (quoting *United States v. Carbone*, 798 F.2d 21, 24 (1st Cir. 1986))).

Mr. Morgan also argues that the audio recording was prejudicial and lacked probative value. *See* TENN. R. EVID. 403. To justify exclusion of evidence on this ground, "its probative value" must be "substantially outweighed by the danger of unfair prejudice." *Id.* Evidence has probative value so long as it has "any tendency" to make a material fact more are less probable. *Id.* 401. And prejudice is only "unfair" if there is an "undue tendency to suggest decision on an improper basis." *State v. DuBose*, 953 S.W.2d 649, 654 (Tenn. 1997).

Here, the recording was of the incident itself. As the trial court reasoned before hearing the recording, it could either show that Mr. Morgan made threats as the Goodriches claimed, or it could "exonerate" him. So the recording was probative. And it did not suggest an improper basis for the court's decision. Whether Mr. Morgan placed the Goodriches "in fear of physical harm" was a proper basis for deciding on the petitions. *See* Tenn. Code Ann. §§ 36-3-601(1), -605(b) (2021). The recording helped the court decide on that proper basis.

C.

Mr. Morgan's remaining arguments go to the trial court's findings of fact. We review those findings with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). We give great weight to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009).

Mr. Morgan argues that the recording did not reflect what the Goodriches claimed it did. He contends that Ms. Goodrich lied and that Mr. Goodrich testified differently than what he alleged in his petition. Mr. Morgan also emphasizes the fact that he and three other witnesses supported his version of events. All of these arguments go to the weight of the

evidence and the credibility of witnesses. The court gave weight to the recording and the Goodriches' testimony, while discrediting Mr. Morgan's testimony. We will not disturb those determinations on this record. The evidence preponderates in favor of the trial court's findings.

## III.

Mr. Morgan's arguments are either waived or unavailing. So we affirm the trial court's grant of orders of protection to the Goodriches.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE
